NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 10 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OKLAHOMA POLICE PENSION AND
RETIREMENT SYSTEM; OKLAHOMA
FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM,

Plaintiffs-Appellants,

v.

LIFELOCK, INC.; et al.,

Defendants-Appellees.

No. 17-16895

D.C. No. 2:15-cv-01398-SRB

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted January 16, 2019
San Francisco, California

Before: CLIFTON and FRIEDLAND, Circuit Judges, and ADELMAN,** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Lynn S. Adelman, United States District Judge for the
Eastern District of Wisconsin, sitting by designation.

Plaintiff-Appellants Oklahoma Police Pension and Retirement System and Oklahoma Firefighters Pension and Retirement System (collectively, the "Oklahoma Funds") appeal the district court's dismissal of their securities fraud claims.[1]  The district court held that the Oklahoma Funds' allegations did not satisfy the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, because they did not raise a strong inference that Defendants-Appellees Todd Davis, Chris Power, Hilary Schneider and LifeLock, Inc., acted with scienter. We affirm in part, reverse in part, and remand.

**1.**     The Oklahoma Funds adequately alleged falsity.  "[O]nce defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018) (quotation marks and brackets omitted).  In other words, companies mislead investors when they tout their products' capabilities but fail to disclose significant flaws that undercut those capabilities.  *See id.* at 1010.

---

[1]  The Oklahoma Funds alleged that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. They also alleged control person claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

During the class period, LifeLock repeatedly touted the "real-time" nature of its identity theft alerts.[2] According to the complaint, however, more than 70% of a particular type of alert (the "Credit Check Alerts") were "stale"—they were sent more than one week late. The complaint also alleged that the Credit Check Alerts were important, because consumers of LifeLock's premium "Ultimate Plus" service valued receiving the Credit Check Alerts in real time.[3] LifeLock's positive statements about its "real-time" alerts therefore concealed a significant flaw affecting LifeLock's identity theft products. Thus, the Oklahoma Funds successfully alleged that LifeLock misled investors.

LifeLock contends that the warnings included in the "Risk Factors" sections of its SEC filings "undercut any claim that investors were deceived."

---

[2] LifeLock's quarterly report issued on July 31, 2014 offered "proactive, near real-time, actionable alerts," and Schneider and Davis made statements at the Merrill Lynch Conference on June 3, 2015, promising immediate credit alerts following significant purchases. We hold that those statements, as well as additional statements in between touting "real-time" identity theft alerts, were sufficient to allege violations of Section 10(b) from July 31, 2014 to July 21, 2015. Davis's alleged statement on the July 30, 2014 earnings call offering "data breach notifications that will keep members up to date on significant breaches," however, is not sufficiently misleading. Nor is Davis's statement that the Ultimate Plus package was the "most comprehensive product on the market." As LifeLock points out, nothing in the complaint demonstrates that Ultimate Plus was *not* the most comprehensive identity protection product on the market.

[3] Our discussion relies on the allegations in the complaint. Because these allegations were plausible and pled with particularity, *see* 15 U.S.C. § 78u-4(b)(1), we assume they are true for the purposes of deciding LifeLock's motion to dismiss. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 612 (9th Cir. 2017).

We disagree. Those disclosures did not "counterbalance [the] misleading impression created by [the initial misrepresentations]." *Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996) (quotation marks omitted). LifeLock's risk disclosures only discussed the possibility of future problems. They did not warn investors that any of the Credit Check Alerts were stale, let alone close to 70% of them. Consequently, they did not negate LifeLock's earlier misstatements. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("But learning that stop-work orders *might* be issued is quite different from knowing they were in fact issued. One indicates a risk, the other a certainty. It goes without saying that investors would treat the two differently.").[4]

**2.**     The Oklahoma Funds also adequately alleged that Schneider, Davis, and LifeLock intentionally or recklessly deceived investors. Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that [each] defendant acted with [scienter]." 15 U.S.C. § 78u-4(b)(2)(A). An inference is "strong" if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts

---

[4] LifeLock, citing *Santa Fe Industries, Inc. v. Green*, also maintains that its statements were not false because "neither mismanagement nor non-disclosure thereof constitutes securities fraud." In *Santa Fe*, the Supreme Court held that Section 10(b) did not regulate *internal* corporate mismanagement. 430 U.S. 462, 474-79 (1977). The defendants in that case did not make any misleading statements. *Id.* at 474, 476. *Santa Fe* does not protect defendants who mismanage their company and lie to investors about that mismanagement.

4

alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

That analysis is "inherently comparative." *Id.* at 323. Courts must "consider

plausible, nonculpable explanations for the defendant's conduct, as well as

inferences favoring the plaintiff," and then determine which inference is more

compelling. *Id.* at 324-26. After considering the allegations in the complaint

holistically, *see id.* at 326, we conclude that the inference that Schneider and Davis

intentionally or recklessly deceived investors is as least as compelling as any

nonculpable inference.

The complaint alleged that (1) the stale Credit Check Alerts were a

widespread problem affecting one of LifeLock's most important business lines; (2)

LifeLock entered into a consent decree with the FTC in 2010 that required it to

cease exaggerating the capabilities of its identity theft products; (3) in July 2013

and March 2014, former employees filed complaints alleging that LifeLock was

throttling alerts to certain classes of customers; (4) Schneider received reports that

contained detailed statistics about stale alerts;[5] and (5) Schneider admitted that she

---

[5] LifeLock argues that we should disregard this allegation because it is based on a statement that Rob Ryan, LifeLock's Vice President of Member Services, allegedly made to CW 5, a confidential witness. "But the fact that a confidential witness reports hearsay does not automatically disqualify his statement from consideration in the scienter calculus. Instead, we examine a confidential witness's hearsay report to determine if it is sufficiently reliable, plausible, or coherent." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016) (quotation marks and citations omitted). We credit the allegations attributed to

was working to fix the stale alert problem. Taken together, those allegations undercut the only plausible nonculpable explanation for Schneider's conduct—that she did not discover the full extent of the problems affecting the Credit Check Alerts—because they suggest that Schneider both paid attention to the stale alerts and received detailed information about them. We therefore conclude that the inference that Schneider intentionally or recklessly misled investors is at least as compelling as any competing inference. The Oklahoma Funds' allegations against Schneider satisfy the PSLRA.

As to Davis, the Oklahoma Funds alleged that he discussed LifeLock's ability to send real-time alerts extensively in his public statements, and that Schneider and Davis worked together to promote LifeLock's identity protection products. Those allegations support the inference that once Schneider discovered that 70% of the Credit Check Alerts were stale, she shared that fact with Davis. That being said, the Oklahoma Funds have alleged that Schneider received the reports with detailed statistics on stale alerts "as early as November 2014," so that fact cannot support a strong inference of Davis's scienter for the period of July 31,

---

CW 5 because they form a plausible and coherent narrative and because CW 5 was "in a position to be personally knowledgeable" that Ryan met with Schneider and discussed the reports on stale alerts that CW 5 had compiled. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).

2014 to early November.[6] Nevertheless, given Davis's position as CEO, his involvement with the promotion of LifeLock's identity theft products, the 2010 consent decree with the FTC concerning LifeLock's misrepresentations of its alert-based products, the complaints filed by former employees identifying problems with LifeLock's real-time alerts, and the overall importance of real-time Credit Check Alerts to LifeLock's business model, we hold that the inference that Davis recklessly failed to discover that a high percentage of Credit Check Alerts were stale even before Schneider definitively started receiving detailed reports in November 2014 is at least as compelling as any competing inference. Consequently, the Oklahoma Funds' allegations against Davis also satisfy the PSLRA.

The allegations against Power are different. There are no allegations connecting Power to the stale Credit Check Alerts directly.[7] As a result, the Oklahoma Funds' allegations against Power are insufficient. We therefore affirm the dismissal of the Oklahoma Funds' Section 10(b) claims against Power.

---

[6] This does not affect our analysis of Schneider's scienter, because Schneider did not make any allegedly misleading statements until after November 2014.

[7] The Oklahoma Funds argue that Power's resignation contributes to a strong inference of scienter. But resignations that occur shortly after a company announces bad news do not suggest that an executive intentionally deceived investors unless the plaintiff "plead[s] facts refuting the reasonable assumption that the resignation occurred as a result of [the bad news] itself." *Zucco Partners*, 552 F.3d at 1002. The Oklahoma Funds failed to plead such facts here.

7

That leaves the question of LifeLock's scienter. "In most cases, the most straightforward way to raise an inference of scienter for a corporate defendant will be to plead it for an individual defendant." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) (brackets and citations omitted). Because the Oklahoma Funds have adequately alleged that Davis and Schneider acted with scienter, their allegations against LifeLock also satisfy the PSLRA. *See id.*

In sum, the Oklahoma Funds have adequately alleged that Schneider, Davis, and LifeLock violated Section 10(b).[8] We therefore reverse the district court's order dismissing the Oklahoma Funds' complaint with prejudice in part.

Each party to bear its own costs.

**AFFIRMED in part; REVERSED in part; REMANDED for further proceedings.**

---

[8] By dismissing the Second Amended Complaint with prejudice, the district court dismissed the Oklahoma Funds' control person claims without specifically addressing them. It apparently reasoned that plaintiffs who fail to allege a Section 10(b) claim necessarily fail to allege a Section 20(a) claim. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002). Because we conclude that the Oklahoma Funds' 10(b) claims against LifeLock survive, we also reverse the dismissal of the Section 20(a) claims against Davis, Power, and Schneider.